# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BEATRIZ ICAZA** | **CIVIL ACTION** |
| **VERSUS** | **NO:       08-4154** |
| **SAM SEELIG AND SLS ARTS, INC.,** | **SECTION: "C" (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.

## I.     Factual Background

The Plaintiff, Beatriz Icaza ("Icaza") filed suit against the Defendants Sam Seelig ("Seelig") and SLS Arts, Inc. ("SLS"), alleging that she was subjected to a discriminatory and hostile work environment.  (R. Doc. 1, Compl., ¶¶ 17, 19.)  Icaza complains that Seelig, one of the Defendants, paid her less and awarded her lower bonuses than men who perform the same work.  (R. Doc. 1, ¶ 11.)

Icaza alleges that Seelig is the owner and President of SLS, and that he supervised and had control over her employment at SLS.  (R. Doc. 1, ¶ 12.)  She further maintains that, on August 17, 2007, she filed a charge with the Equal Opportunity Commission ("EEOC"), alleging discrimination

on the basis of sex.   (R. Doc. 1, ¶ 13.)  Thereafter, on May 15, 2008, Icaza added an additional

charge to her EEOC on grounds of retaliation against her for complaining.

In response to the Complaint filed in this Court on August 11, 2008, (R. Doc. 1), the

Defendants Seelig and SLS filed the subject Motion To Dismiss (R. Doc. 2), seeking dismissal of

Icaza's claims against Seelig for failure to state a claim upon which relief may be granted.  The

Defendants argue that Mr. Seelig is an individual and was not Icaza's employer as a matter of law;

therefore, he cannot be sued.  The Defendants also move to dismiss Icaza's state law claim for

intentional infliction of emotional distress.

## II.    <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides that, in response "to a claim for

relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim" the pleader

may raise by motion the defense of "failure to state a claim upon which relief may be granted."

Fed.R.Civ.P. 12(b)(6).  In considering a motion to dismiss for failure to state a claim pursuant to

Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most

favorable to the plaintiff.' " *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464

(5th Cir.2004)(*quoting Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999).

"[T]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face"

in order to survive a Rule 12(b)(6) motion to dismiss.  *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955,

1974 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative

level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

*Id.* at 1965 (quotation marks, citations, and footnote omitted).[1]  Pursuant to Rule 12(b)(6), the motion to dismiss shall be treated as a motion for summary judgment.

## III.   Analysis

### A.   Official Capacity Claim

The Defendants argue that Seelig cannot be held liable with respect to Icaza's sex discrimination and retaliation claims in his official capacity, because he is not Icaza's employer. Thus, they assert that Seelig should not be named as a Defendant and insist that Icaza fails to state a claim against him.  Accordingly, the Defendants urge the Court to dismiss the claims against Seelig.

Icaza opposes the motion, contending that Seelig is the owner of SLS, and the ultimate decision maker regarding pay rates, bonuses, hiring, and firing.  She also alleges that Seelig is the owner and President of SLS, as well as the manager of the company, and that he had supervisory control over her employment.  Icaza asserts that owners, like Seelig, can sometimes be employers. She further suggests that SLS may be a mere "alter ego" of its owner, Mr. Seelig.  Icaza therefore contends that, at this stage, it is not possible to rule Seelig out as an "employer."

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., prohibits any employer, employment agency, or labor organization from engaging in unlawful employment

---

[1] Judge Duval noted in *In re Katrina Canal Breaches Consol. Litigation*, No. 05-4182, 2008 WL 4449970 (E.D. La. Sept. 29, 2008) that the Supreme Court abrogated the often cited "no set of facts" language in *Conley*, commenting that the case has been frequently mis-characterized as setting forth a minimum pleading standard when it was simply "describ[ing] the breadth of opportunity to prove what an adequate complaint claims." *Twombly*, 127 S.Ct. at 1968. In other words, the *Twombly* court reads *Conley* as standing for the proposition that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (citing *Sanjuan v. American Bd. of Psychiatry and Neurology*, 40 F.3d 247, 251 (7th Cir.1994)(once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"). Thus, rejecting the *Conley* "no set of facts" test, the *Twombly* court employs a plausibility standard for scrutinizing the sufficiency of pleadings in the context of Rule 12(b)(6) motion.

practices based upon an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e. The term "employer" is statutorily defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b).

Title VII defines the term employer to include "any agent" of an employer. *Id.* However, the Fifth Circuit does not interpret the statute as imposing individual liability for such a claim. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) (*citing Pfau v. Reed*, 125 F.3d 927, 935-36 (5th Cir.1997), *vacated and remanded on other grounds,* 525 U.S. 801 (1998)). Rather, Congress's purpose in extending the definition of an employer to encompass an agent in Section 2000e(b) was simply to incorporate respondeat superior liability into Title VII. *Id.* ( *quoting Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir.1994) (other citations omitted). Thus, a Title VII suit against an employee is actually a suit against the corporation. *Id.*

In *Indest*, the United States Court of Appeals for the Fifth Circuit affirmed this Court's dismissal of the plaintiff's Title VII claims against her supervisor in both his individual and official capacities. The Fifth Circuit noted that this Court "reasoned that it would be redundant for a plaintiff to sue both her supervisor in his official capacity and her employer, because the employer would bear responsibility for the liability of either party through Title VII's incorporation of the principal of vicarious liability." *Id.* In affirming, Judge Jones wrote, "[w]e agree that ... a party may not maintain a suit against both an employer and its agent under Title VII." *Id. See also Harbin v. CII Carbon, L.L.C.*, No. Civ. A. 99-0269, 1999 WL 350161, at *2 (E.D. La. May 28, 1999) (Clement, J.). Therefore, Icaza's claim against Seelig in his official capacity as owner and manager of SLS is dismissed.

**B.** **Individual Capacity Claim**

 Seelig also argues that, to the extent Icaza seeks to hold him individually liable, her claim should be dismissed.  Seelig notes that Icaza complains that he paid her unequally for identical work, solely because of her sex and in retaliation for complaining about unequal treatment.  Seelig asserts that he cannot be held liable in his individual capacity, because, as noted previously, he was not her employer.

Icaza contends that Seelig can, in fact, be held liable in his individual capacity.  According to Icaza, while Seelig maintains that he is not the employer, he fails to explain how this is true.  She insists that, because Seelig is the sole decision maker for the company, he should be subject to liability in his individual capacity pursuant to LA. REV. STAT. ANN. § 23.302.

 Pursuant to Louisiana Employment Discrimination law, an employer is defined as any person who receives services from an employee and, in return, gives compensation of any kind to the employee and employs twenty or more employees in Louisiana for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  LA. REV. STAT. ANN. §23:302(2).

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating on the basis of sex.  *See*  42 U.S.C. § 2000e(k) (2000).  The Louisiana Employment Discrimination Law parallels Title VII.  *See*  LA. REV. STAT. ANN § 23:301- 314 , 332-333  (West 2009).  An individual person who is not an "employer" cannot be sued under Louisiana's employment discrimination laws. *See King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181, 185 (La. 1999).

For purposes of Louisiana's employment discrimination laws, LA. REV. STAT. ANN. § 23:302(2) defines an "employer " as:

[A] person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

Unlike Louisiana's statute, the federal statutory provisions under Title VII and 42 U.S.C. § 2000-e(b) provide that the term "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees...." *Seal v. Gateway Companies*, No. Civ. A. 01-1322, 2002 WL 10456, at *3 (E.D. La. Jan. 3, 2002) (Engelhardt, J.) (quoting 42 U.S.C. § 2000e(b)). There is no suggestion whatsoever in the federal statute of any intention of limiting liability to either a "payroll" employer or an employer who "compensates" an employee in return for services rendered. *Id.* These are defining terms, however, for "employer" liability under Louisiana's employment discrimination statute. *Id.*

Nonetheless, "Louisiana courts have not found that such a construction constitutes a myopic view, but rather follows the clear meaning of the statutory language." *Id.*, at *4. Furthermore, Louisiana courts must also be guided by Louisiana Code of Civil Procedure Article 9, which provides: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." *Id.*

Therefore, to satisfy the definition of employer under Louisiana's employment discrimination statute, one must: (1) receive services from an employee and, in return, give compensation to that employee; and (2) meet the requisite number of employees prescribed by the statute. *See Id.* (*citing* LA. REV. STAT. ANN. § 23:302(2); *Hornsby v. Enter. Transp. Co.*, 987 F.Supp. 512, 515 (M.D. La.1997)) (internal notes omitted).

Accordingly, in order for Icaza to sue Seelig under a claim of employment discrimination, Icaza must ultimately establish that Seelig, individually, received services from Icaza and compensated her. However, there is no affidavit indicating that Seelig did not pay or receive services from Icaza. Further, Seelig has failed to submit an affidavit indicating the number of employees he has, which would establish whether he meets the statutory requirements to qualify as an employer. The Complaint, however, alleges that Seelig was Icaza's employer.

While the Defendants contend that Seelig is "simply an employee of the defendant SLS," the Court has not been provided with any evidence to support this contention. Therefore, considering the standard set forth in the Louisiana Discrimination Statute, the motion to dismiss Icaza's claim against Seelig based upon LA. REV. STAT. ANN. § 23:302 is denied.

**C.      Intentional Infliction of Emotional Distress Claim**

The Defendants also seek the dismissal of Icaza's state law intentional infliction of emotional distress claim. They contend that Icaza's Complaint fails to assert sufficient factual allegations of conduct that would rise to the level of outrageous and extreme conduct as set forth by the Louisiana Supreme Court. On the other hand, Icaza contends that, contrary to the allegations set forth by the Defendants, a jury could find that her work conditions are sufficient to meet the legal standard intentional infliction of emotional distress.

An emotional distress claim under Louisiana law requires that the plaintiff establish three elements: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be substantially certain to result from the conduct." *Oramous v. Military Dept.*, No. 05-367, 2007 WL 1796194, at *9 (E.D. La. June 18, 207) (Wilkinson, J.) (*citing Morris v. Dillard Dep't Stores*, 277 F.3d 743, 756 (5th Cir.2001); *Nicholas v. Allstate Ins. Co.,* 765

So.2d 1017, 1022, 1024-25 (La. 2000); *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)).

The Defendants argue that Icaza's Complaint describes acts of discrimination which, even if accepted as true, cannot rise to the level of outrageousness necessary to state a claim for intentional infliction of emotional distress. As noted above, motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted, precisely because the Court may dismiss a Complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. All of the cases cited by Defendants involved findings made either upon a motion for summary judgment or after a trial on the merits. Although it remains to be seen whether Icaza will be able to prove intentional infliction of emotional distress, her allegations are sufficient to state a claim. Therefore, the Defendants motion to dismiss is denied as to Icaza's claim for intentional infliction of emotional distress.

## IV.     Recommendation

Accordingly,

**IT IS RECOMMENDED** that Sam Seelig and SLS's **Motion to Dismiss (R. Doc. 2)** be hereby **GRANTED IN PART** and **DENIED IN PART**.

•       **IT IS GRANTED** as to Icaza's claims against Sam Seelig in his official capacity.

•       **IT IS DENIED** to the extent that the Defendants seek to dismiss: (1) the claims against Seelig in his individual capacity pursuant to the Louisiana Employment Discrimination Laws; and (2) the state law claim of Intentional Infliction of Emotional Distress.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 20th day of April, 2009.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**